[Civ. No. 5087.   Fourth Dist.   Oct. 17, 1955.]

M. C. ELLIOTT, Appellant, v. LESTER JOHN ELLIOTT, as Administrator, etc., Respondent.

Harold Payne for Appellant.

Alden Reid for Respondent.

BARNARD, P. J.—This is an action to quiet title to three parcels of real property near Twentynine Palms, consisting of two 5-acre tracts and one of 3 acres. The complaint, filed in December, 1952, alleged that the plaintiff was then and for a considerable time had been the owner of and in possession of these three parcels, and that the defendant Lester Elliott, as an individual and as administrator of the estate of Marie Elliott, claimed some interest in the property adverse to the plaintiff. As a second cause of action it was alleged that the plaintiff acquired ownership of said lands on March

23, 1937, by virtue of a gift of the same from his brother John Elliott which was acquiesced in by Marie Elliott, wife of John Elliott; that John Elliott and Marie Elliott had held legal title to said lands as joint tenants; that pursuant to said gift plaintiff entered into possession of said lands and has since occupied and improved the same and paid the taxes thereon; that John Elliott died on June 15, 1940; that Marie Elliott died on January 19, 1947; that Marie Elliott's will was admitted to probate in the Superior Court of the County of San Bernardino on December 3, 1948; and that the defendant Lester Elliott is the duly qualified and acting administrator of her estate. The prayer was that it be adjudged that the plaintiff is the owner of these parcels of land, and that the defendant be forever barred from asserting any claim respecting said lands adverse to the plaintiff.

After a trial, the court found that the plaintiff is not now and never has been the owner of said parcels and, except as thereafter found, is not entitled to the possession of said lands; that the plaintiff acquired no ownership in these lands or premises by reason of a gift from his brother John Elliott, or from any other person; that the plaintiff, pursuant to the express permission and consent of his brother John Elliott, has been in the possession of and is now in the use and occupancy of one of these 5-acre tracts; that a structure used as a residence is located on this 5-acre tract and has been continuously occupied by the plaintiff since the year 1936 with the original approval of the owner John Elliott; that it was agreed between plaintiff and John Elliott that the plaintiff could use said residence as a home for the term of his life; and that the plaintiff made no improvements to any of these three parcels, except only to that parcel upon which the structure was erected and which had been occupied by the plaintiff as a residence since the year 1936. As conclusions of law, it was found that the plaintiff has no right, title or interest whatsoever in or to these parcels of land, with the sole exception that he is the owner of an irrevocable license to use the 5-acre parcel upon which the house was built, as a home, for the term of his life. Judgment was entered accordingly, adjudging and decreeing that the plaintiff take nothing by reason of his complaint save and except only that he is the owner of an irrevocable license to use this 5-acre parcel, as particularly described, for the term of his life. Plaintiff's motion for a new trial was denied, and he has appealed from the judgment.

There was little conflict in the evidence. Prior to 1936, the plaintiff lived in Chula Vista where he worked for the city and also conducted a private business as a nurseryman. His daughter, Betty, lived with him and went to school. During summer vacations she visited at the home of her uncle John Elliott (the plaintiff's brother) and his wife Marie, who lived in Hollywood. Betty became ill in 1935, and John and Marie took her to their doctor in Hollywood, who told them that Betty had tuberculosis and should live on the desert. John Elliott and the plaintiff then made plans to enable her to do so. John Elliott purchased these parcels at Twentynine Palms which were conveyed to him and his wife as joint tenants. He also purchased the material for a ready-cut house which cost $428.22. The plaintiff left Chula Vista and went to Twentynine Palms, and built a small house on one of the 5-acre parcels in order to live there and take care of Betty. John paid for the land, for the building materials, and $200 toward the cost of a well. The plaintiff built the house and made other improvements with his own labor. He bought some secondhand plumbing for which he paid $10 or $12, and agreed with the well driller to pay the remaining cost of the well, which has never been paid. Betty came there to live with her father in December, 1936, and continued to live there until she was married. She died in 1943.

The plaintiff paid the taxes for the first year, 1936. When he showed the tax receipt to his brother John, John told him "to lay off paying the taxes because you haven't any money coming in to live on, and I will take care of the taxes. You do the building and fix the place up for Betty." In the same conversation John told the plaintiff, "This is yours. I want you and Betty to have it as long as you live." John then paid the taxes up to the time of his death, and he and his wife Marie visited the plaintiff and Betty at the place from time to time. While visiting there, shortly before his death in 1940, John told the plaintiff "I willed it to you, but I am going to make out a deed to you because I am afraid you are going to have trouble with your sister-in-law and possibly my son." At this time Betty was already married and was living "up in the country." John died a couple of weeks after that, and the plaintiff went to Hollywood for his funeral. When he arrived there Marie said to him "That desert property, Jack has willed it all to you, I don't like it." Some weeks later John's widow, Marie, visited the plaintiff at his

home, at which time she offered to sell that place to him for $800 in cash. The plaintiff was unable to pay this amount and made a counteroffer, which was refused, and the parties came to no agreement. Marie then paid the taxes up to the time of her death, which occurred on January 19, 1947. By her will, which was probated on December 3, 1948, she gave all her right, title and interest in and to these parcels of land to the defendant Lester John Elliott, who was appointed as administrator with the will annexed of her estate. A will of the plaintiff's brother John Elliott, which was dated May 3, 1938, was probated on January 18, 1949. By that will he gave all of his property to his wife Marie. Shortly after Marie's death, defendant Lester John Elliott sent a postcard to the plaintiff reading: "Uncle Mike. Sit tight. Everything is all mine now, but it is still your home. We're Elliotts." The plaintiff continued to live in the house and paid the taxes for the year 1947. The taxes for the years 1948, 1949 and 1950 were allowed to become delinquent. The plaintiff paid the taxes for the year 1951, and in 1952 he paid the money necessary to redeem the property from the tax sales for the years 1948, 1949 and 1950. There was no evidence that the plaintiff ever improved or occupied the other two parcels.

The appellant contends that the evidence discloses that he acquired title to these parcels of land by adverse possession. It is argued that he occupied the land and paid taxes thereon for more than five years under a claim of right; that he gave up his business and moved onto the land which his brother John had purchased for the purpose of making a home on the desert for his daughter Betty, whom they both loved; that John furnished the land and ordered and paid for the lumber, but he moved onto the place and built the house; that John told him that he had willed the place to him, and also that he intended to deed it to him as soon as he was able; that after John's death Marie told him that John had willed him the desert property; and that all this shows a valid parol gift when the plaintiff went into possession of the property. It is further argued that the evidence shows that the appellant had color of title because of this parol gift or agreement with his brother, and that the requirement for a written color of title is satisfied by the fact that both John and his wife Marie told the appellant that a will had been made giving the property to the appellant; that the hostile character of the appellant's possession and occupancy is shown by the evidence that appellant's brother

John said he would pay the taxes, and told the appellant that he had made a will giving him the property and intended to deed it to him because he believed the appellant was going to have trouble with Marie or with Lester, and by the fact that Marie told the appellant that John had willed the desert property to him and she did not like it; and that this evidence was sufficient to make a prima facie showing that the appellant's occupancy and holding were adverse and hostile.

There is no evidence sufficient to establish a gift of this property to the appellant from his brother John, or from anyone else. Aside from other considerations, John had no right to give away joint tenancy property, without the consent of his cotenant. There was no sufficient evidence of color of title in the appellant, or that his occupancy and possession of the property was hostile to the record owners. He was told by his brother, originally, that he was to have the use of the house. While he was later told that his brother intended to deed the place to him, this was never done. The brother's statement that he had at one time willed the place to him is not controlling, and the brother's last will, admitted to probate, revoked all former wills and gave all of the property to his wife Marie. The most that the evidence shows is a permissive use, that John told the appellant several times that he wanted the appellant and Betty to have the property as long as they lived, and that Marie and Lester permitted him to remain there. The court, by its judgment, carried out the intention expressed by John and the respondent did not appeal from that portion of the judgment.

The appellant further contends that in a case of this nature a defendant must recover upon the strength of his own title and not upon any weakness in the title of his adversary and that, in this case, the respondent did not prove title in himself. It is argued that while the probate record in the estate of Marie Elliott was introduced in evidence, only a portion of the proceedings in the estate of John Elliott was produced; and that no evidence was received showing that this particular property was distributed in that estate to Marie Elliott.

No judgment was entered quieting title to the property in the respondent, and the rule thus relied upon has no application here as against the respondent. The judgment entered was that the appellant take nothing by reason of his action, with the exception of the right to occupy one parcel for the term of his life. Moreover, it was pleaded and

is admitted that title to the parcels in question was originally taken in the names of John Elliott and his wife Marie as joint tenants. There is nothing in the record to indicate that Marie Elliott's title to this property would be affected by the will of John Elliott, or by the probate proceedings in his estate, other than their value as showing the termination of John Elliott's interest in the property.

Insofar as the appellant's interest in the property is concerned the findings are not only fully supported by the evidence, but are as favorable to the appellant as any evidence in the record would permit.

The judgment is affirmed.

Griffin, J., concurred.

A petition for a rehearing was denied November 9, 1955.